# United States District Court
for the
Western District of New York

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address.)*

**One (1) Calero Cell Phone model U10, IMEI 86740102023328;**
**one (1) Apple I-phone Model: A1661; FCC ID: BCG-3087A;**
**one (1) Apple I-phone Model: A1778; FCC ID: BCG-E3091A;**
**one (1) ZTE Cell Phone Model Z223, Serial Number 322760510896;**
**one (1) Samsung Cell Phone Model SM-J120A-UD Serial Number R58J6206HXM;**
**one (1) Alcatel Cell Phone Model 2017B; FCC ID RAD506;**
**one (1) ZTE Cell Phone Model Z223 Serial Number 32586429021E;**
**one (1) LG Cell Phone Model K271 Serial Number 610CYVU657191;**
**one (1) ZTE Cell Phone Model Z320 Serial Number 329ZF65962A1C; and**
**one (1) Rose Gold Apple I-phone Model: A1784; FCC ID: BCG-E3092A**



Case No. 17-MJ- 173

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

i. One (1) Calero Cell Phone model U10, IMEI 86740102023328;
ii. one (1) Apple I-phone Model: A1661; FCC ID: BCG-3087A;
iii. one (1) Apple I-phone Model: A1778; FCC ID: BCG-E3091A;
iv. one (1) ZTE Cell Phone Model Z223, Serial Number 322760510896;
v. one (1) Samsung Cell Phone Model SM-J120A-UD Serial Number R58J6206HXM;
vi. one (1) Alcatel Cell Phone Model 2017B; FCC ID RAD506;
vii. one (1) ZTE Cell Phone Model Z223 Serial Number 32586429021E;
viii. one (1) LG Cell Phone Model K271 Serial Number 610CYVU657191;
ix. one (1) ZTE Cell Phone Model Z320 Serial Number 329ZF65962A1C; and
x. one (1) Rose Gold Apple I-phone Model: A1784; FCC ID: BCG-E3092A

located in the Western District of New York, there is now concealed *(identify the person or describe the property to be seized)*:
See Schedule of Items to be Searched and Seized, which is attached and incorporated herein by reference.

The basis for search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
  ☒ evidence of a crime;
  ☐ contraband, fruits of crime, or other items illegally possessed;
  ☐ property designed for use, intended for use, or used in committing a crime;
  ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of Title 21, United States Code, Sections 841(a)(1) and 846 *[statutory violation(s)]*.

The application is based on these facts:

- ☒ continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

MARK R. SCHIRCHING
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  December 10, 2017

_____
*Judge's signature*

HONORABLE H. KENNETH SCHROEDER, JR.
UNITED STATES MAGISTRATE JUDGE
*Printed name and Title*

City and state:  Buffalo, New York

## SCHEDULE OF ITEMS TO BE SEARCHED AND SEIZED

a.  Records of telephone calls, including incoming, outgoing, and missed calls; contact information, including addresses, email addresses and telephone numbers; documents and files, including photographs, that reflect names, email addresses, email messages, addresses, telephone numbers, and objects related to the possession with intent to distribute and distribution of cocaine and conspiracy to commit the same;

b.  Records of text messages and email messages, including incoming and outgoing text messages and email messages, and the text and email messages in the searched items, related to the possession with intent to distribute and distribution of cocaine and conspiracy to commit the same;

c.  Records regarding ownership of and/or possession of the searched items; and

d.  Electronic information, data, addresses, maps, and recordings of travels, destinations, intended travels, approximate ground position by utilizing satellites, including historical information, navigation routes, satellite waypoints, saved addresses, destination points, location, speed, and other positioning data, related to the possession with intent to distribute and distribution of cocaine and conspiracy to commit the same.

*HKA*
*12/10/17*

## SEARCH WARRANT AFFIDAVIT

STATE OF NEW YORK  )
COUNTY OF ERIE     )   SS:
CITY OF BUFFALO    )

### I. INTRODUCTION

I, **MARK R. SCHIRCHING**, Special Agent of the Federal Bureau of Investigation, United States Department of Justice, having been duly sworn, states as follows:

1. I am a Special Agent of the Federal Bureau of Investigation (FBI) of the United States Department of Justice. As such, I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

2. I have served as an FBI Special Agent for more than twelve years.[1] During that time, I have participated in investigations involving drug trafficking and organized crime matters, including seven long-term narcotics investigations that utilized the court-authorized interception of wire and oral communications. In addition, I have had the opportunity to work with several other FBI agents and other law enforcement agents and officers of varying

---

[1] I was also previously employed from 1998 to 2005 as an Immigration Officer and Border Patrol Agent with the Immigration and Naturalization Service, now known as the Department of Homeland Security.

experience levels, who have also investigated drug trafficking networks, with regard to the manner in which controlled substances are obtained, diluted, packaged, distributed, sold and used within the framework of drug trafficking in the Western District of New York. As a result of my experience, I am familiar with how controlled substances are obtained, diluted, packaged, distributed, sold, and used in the framework of drug trafficking in the Western District of New York and how drug traffickers utilize wire communications to facilitate their illegal activities. My investigative experience detailed herein, and the experiences of other law enforcement agents, who are participating in this investigation, serve as the basis for the opinions and conclusions set forth herein.

3. Your Affiant states that this investigation was conducted by Special Agents of the FBI and other law enforcement personnel assigned to the FBI Buffalo Division - Safe Streets Task Force (FBI-SSTF).[2] Your Affiant is fully familiar with the facts and circumstances of this investigation, such familiarity having been gained through: your Affiant's personal knowledge based upon your Affiant's participation in this investigation; statements by and/or reports provided to your Affiant by law enforcement personnel of the FBI-SSTF, Erie County Sheriff's office (ECSO) Lackawanna Police Department (LPD), Buffalo Police Department (BPD), Drug Enforcement Administration (DEA); federal court authorized wire communications interceptions; information provided by confidential sources;

---

[2] The SSTF is comprised of Agents and Investigators from the Bureau of Alcohol Tobacco and Firearms, Immigration and Customs Enforcement, Erie County Sheriff's Office, New York State Police, Amherst Police Department, Hamburg Police Department, Town of Tonawanda Police Department, the NFTA Police, U.S. Border Patrol, and the Buffalo Police Department.

consensual recordings; controlled evidence purchases of illegal drugs; information learned through a review and analysis of pen register/detailed calling records (toll records) and subscriber information related to subjects of this investigation installed pursuant to court authorization; interviews of various individuals believed to be associated with subjects of the investigation; physical surveillances; records checks of various public and law enforcement databases; and other investigative techniques.

4. This affidavit is made in support of a federal search warrant application for facilities recovered during the arrest of CESAER RIVERA-FIGUEROA pursuant to a Federal Arrest Warrant, and the subsequent execution of a Federal Search Warrant at the residence of RIVERA-FIGUEROA at his residence, 92 Wiley Place, Buffalo, New York. The following facilities were seized by law enforcement, and this application seeks authorization to search the following facilities:

   i. One (1) Calero Cell Phone model U10, IMEI 86740102023328;

   ii. one (1) Apple I-phone Model: A1661; FCC ID: BCG-3087A;

   iii. one (1) Apple I-phone Model: A1778; FCC ID: BCG-E3091A;

   iv. one (1) ZTE Cell Phone Model Z223, Serial Number 322760510896;

   v. one (1) Samsung Cell Phone Model SM-J120A-UD Serial Number R58J6206HXM;

   vi. one (1) Alcatel Cell Phone Model 2017B; FCC ID RAD506;

   vii. one (1) ZTE Cell Phone Model Z223 Serial Number 32586429021E;

   viii. one (1) LG Cell Phone Model K271 Serial Number 610CYVU657191;

   ix. one (1) ZTE Cell Phone Model Z320 Serial Number 329ZF65962A1C; and

   x. one (1) Rose Gold Apple I-phone Model: A1784; FCC ID: BCG-E3092A,

3

all of which are currently located in the FBI evidence control room (collectively hereinafter "subject phones").

5. The information contained in this affidavit is based upon my participation and upon reports and information received from other law enforcement officers and agencies. This affidavit is provided for the limited purposes of establishing probable cause to support the attached search warrant application and therefore does not contain each and every detail of the investigation.

## II. PROBABLE CAUSE

6. Since early 2017, the FBI Buffalo Division Safe Streets Task Force (FBI SSTF) has been conducting an investigation of the criminal activities of members and associates of the CESAR RIVERA-FIGUEROA (herein after "RIVERA-FIGUEROA") Drug Trafficking Organization (DTO), a large scale drug-trafficking organization in the City of Buffalo. By way of background, in March 2017, the FBI's Buffalo Division Safe Streets Task Force (SSTF) and the Buffalo Office of the Drug Enforcement Administration (DEA) initiated an Organized Crime and Drug Enforcement Task Force (OCDETF) investigation which targeted members of the RIVERA-FIGUEROA DTO. It was determined that RIVERA-FIGUEROA is a large scale cocaine trafficker from Puerto Rico. RIVERA-FIGUEROA utilized associates in Buffalo, New York and Puerto Rico to distribute large amounts of cocaine throughout Buffalo, New York. RIVERA-FIGUEROA coordinated shipments of cocaine from Puerto Rico to Buffalo.

7. On July 21, 2017, the Honorable William M. Skretny, Senior District Court Judge for the Western District of New York, signed an Order authorizing the interception of wire and electronic communications over telephone number 716-228-5692 (TT-1). The telephone number 716-228-5692 was utilized by DANIEL NAVARRO, a member of the RIVERA-FIGUEROA DTO. On July 24, 2017 members of the FBI SSTF began reviewing intercepted calls made to/from NAVARRO.

8. On July 27, 2017, based on information obtained through the interception of telephone calls over DANIEL NAVARRO's telephone between NAVARRO and RIVERA-FIGUEROA, the United States Postal Inspection Service (USPIS) was advised of a possible package containing cocaine being shipped to NAVARRO's associate, SUCELY ROMERO, 29 Tower Street, Buffalo, NY 14215. After being alerted to the packages going to 29 Tower Street, the USPIS identified related suspicious packages going to LILIAM ANDINO, 590 Utica Street Apartment 1, Buffalo, NY 14213 and to JANELIS ORTIZ, 86 Grant Street, Apartment 202, Buffalo, NY 14213. Federal search warrants were obtained by the USPIS on July 28, 2017, for all three packages, and they were found to contain an aggregate of four kilograms of cocaine. Based on intercepted calls between NAVARRO and RIVERA-FIGUEROA, it was determined that RIVERA-FIGUEROA was tracking the status of the packages through the U.S. Postal Service tracking system.

9. On August 3, 2017, members of the FBI SSTF and DEA were conducting surveillance on NAVARRO. Based on information obtained through the interception of telephone calls over NAVARRO's telephone it was determined that NAVARRO was selling

5

one kilogram of cocaine to KELLEY THOMAS.[3] After members of the SSTF observed THOMAS and NAVARRO meeting, a marked Buffalo Police Department police car, acting on information provided by the SSTF, stopped a vehicle driven by THOMAS and seized one kilogram of cocaine. After learning about the arrest of THOMAS, NAVARRO told other co-conspirators that he was no longer going to utilize his current telephone number. Based on the following intercepted call it was clear that NAVARRO was acting at the direction of RIVERA-FIGUEROA:

      a.      On August 3, 2017, at 12:51 p.m. (TT-1 Session 2007), DANIEL NAVARRO utilizing TT-1 called CESAR RIVERA-FIGUEROA a/k/a Fat Boy at 716-308-4567, subscriber unknown. RIVERA-FIGUEROA said, "Tell me, love?" NAVARRO said, "Uh,... Kelly called me that he wants one. He's waiting. I told him that he has to wait." RIVERA-FIGUEROA said, "What does Kelly want?" NAVARRO said, "He wants one." RIVERA-FIGUEROA said, "A complete one? Tell him that they are coming tonight, because Luis is going to bring them." NAVARRO said, "I told him--I told him." RIVERA-FIGUEROA said, "Tell him, 'Hey, don't rush, that they are going to bring something soon. Relax. Or--or that some--some things will be arriving in a little while and I will give you the quickest.'" NAVARRO said, "I told him--I told him. Ok." RIVERA-FIGUEROA said, "Ok. Fine." NAVARRO said, "Bye."

10.      On August 15, 2017, the Honorable William M. Skretny, Senior District Court Judge for the Western District of New York, signed an order authorizing the interception of

---

[3]      THOMAS has since pleaded guilty to possession with intent to distribute this kilogram of cocaine in case 17-CR-187-V.

6

wire and electronic communications over telephone number 716-308-4567 (TT-2) and 787-225-1363 (TT-3), utilized by RIVERA-FIGUEROA, and 716-398-8422 (TT-4), utilized by NAVARRO. On August 15, 2017, members of the FBI SSTF began reviewing intercepted calls made to/from RIVERA-FIGUEROA on TT-2 and TT-3, and NAVARRO on TT-4.

11. On September 11, 2017, the Honorable Lawrence J. Vilardo, District Court Judge for the Western District of New York, signed an order authorizing the continued interception of wire and electronic communications over TT-3 and the interception of wire and electronic communications over 787-221-6584 (TT-5), both utilized by RIVERA-FIGUEROA, as well as the continued interception of wire and electronic communications over TT-4, utilized by NAVARRO. On September 11, 2017, members of the FBI SSTF began reviewing intercepted calls made to/from RIVERA-FIGUEROA on TT-3 and NAVARRO on TT-4. Due to technical issues, AT&T was not able to provide the interceptions over TT-5, utilized by RIVERA-FIGUEROA, until September 12, 2017.

12. On September 21, 2017, based on information obtained through the interception of telephone calls over RIVERA-FIGUEROA's telephone, the USPIS was advised of possible packages containing cocaine being shipped to the RIVERA-FIGUEROA DTO, specifically, addressed to Josue Cardona, 1091 Tonawanda St., Buffalo, New York, 14207 and Jean C. Padilla, 6 Anthony Tauriello Dr, Buffalo, N.Y. 14201. Federal search warrants were obtained by the USPIS on September 22, 2017 for both packages. On September 25, 2017, Inspectors from the USPIS executed the search warrants and each package was found to contain one solid brick of cocaine, weighing approximately 1 kilogram

each. Based on the following intercepted calls, it was clear that these packages were shipped from Puerto Rico to members of the RIVERA-FIGUEROA DTO:

    a.    On 09/21/2017 at 11:03 p.m. (TT-5 Session 1140), CESAR RIVERA-FIGUEROA received the following text message on TT-5 from JENHSEN RODRIGUEZ from 716-262-4877, subscriber unknown, "Papi enviame los numeros" [Papi send me the numbers]

    b.    On 09/21/2017, at 11:16 a.m.(TT-5 Session 1141), Cesar Rivera-Figueroa received a call on TT-5 from 716-262-4877 from JENHSEN RODRIGUEZ a/k/a COMPA, subscriber unknown. This call was in the Spanish language and was translated to English. RIVERA-FIGUEROA said, "Well, I send it right now, papi, I'm looking for it because I don't know--" RODRIGUEZ said, "All right, Darling because-- listen, the man, the- the- the- the one arrived but didn't bring anything, here, at uncle's house." RIVERA-FIGUEROA said, "All right, I'll send it to you right now, give me a break." RODRIGUEZ said, "All right, Darling, all right."

    c.    On 09/21/2017 at 11:18 a.m. (TT-5 Session 1143), CESAR RIVERA-FIGUEROA sent the following text message utilizing TT-5 to JENHSEN RODRIGUEZ A/K/A COMPA at 716-262-4877, subscriber unknown, "9505511405527261080633"

    d.    On 09/21/2017 at 11:18 a.m. (TT-5 Session 1144), CESAR RIVERA-FIGUEROA sent the following text message utilizing TT-5 to JENHSEN RODRIGUEZ a/k/a COMPA at 716-262-4877, subscriber unknown, "40"[4]

---

[4] The two tracking numbers sent by RIVERA-FIGUEROA to RODRIGUEZ, 9505511405527261080633 and 9505511405527261080640, match the tracking numbers of the aforementioned cocaine packages that were addressed to 1091 Tonawanda Street and 6 Anthony Tauriello Drive, Buffalo, New York.

e. On 09/21/2017, at 11:38 a.m. (TT-5 Session 1152), Cesar Rivera-Figueroa received a call on TT-5 from 716-262-4877 from JENHSEN RODRIGUEZ a/k/a COMPA, subscriber unknown. This call was in the Spanish language and was translated to English. RIVERA-FIGUEROA said, "Compa--" RODRIGUEZ said, "Tell me, papi." RIVERA-FIGUEROA said, "Sent you the numbers there." RODRIGUEZ said, "Yes, I already, already, already, it says the same thing, but not-- it says the same thing, that it's today, but not-- no-- " RIVERA-FIGUEROA said, "It doesn't say out for delivery?" RODRIGUEZ said, "No." RIVERA-FIGUEROA said, "But that-- Did it went out from Puerto Rico? Does it says that is left Puerto Rico and all that?" RODRIGUEZ said, "Yes, yes, it says that it's arriving today." RIVERA-FIGUEROA said, "But does it says that arrived to the post office, there, in Buffa'." RODRIGUEZ said, "All right, I'm going to call you back really quick, all right?" RIVERA-FIGUEROA said, "All right." RODRIGUEZ said, "Okay."

13. On September 28, 2017, RIVERA-FIGUEROA and 11 others were indicted by the Federal Grand Jury in the Western District of New York under case 17-CR-183-V for a violation of Title 21, United States Code, Section 846 (Conspiracy to Distribute 5 Kilograms or More of Cocaine). On September 29, 2017, RIVERA-FIGUEROA and the 11 co-conspirators were arrested, and Federal Search Warrants were conducted at residences associated with the RIVERA-FIGUEROA DTO. During the execution of the search warrants, evidence of cocaine trafficking was recovered including suspected cocaine, cocaine cutting agents, scales, packaging materials, large amounts of U.S. currency, and firearms. A Superseding Indictment was returned on November 9, 2017. Among the counts alleged in the superseding indictment were charges relating to the aforementioned packages containing

cocaine sent from Puerto Rico to Buffalo, New York through the U.S. Postal Service.

14.  RIVERA-FIGUEROA's residence at 92 Wiley Place, Upper, Buffalo, New York was one of the locations searched pursuant to a Federal Search Warrant, issued under case number 17-mj-140. The **subject phones** were located at 92 Wiley Place, upper, Buffalo, New York.

15.  During this investigation, it was determined that RIVERA-FIGUEROA utilized multiple telephones, both at once and by dropping phones and switching to new phones. As detailed in this Affidavit, RIVERA-FIGUEROA was intercepted over three different telephones, TT-2, TT-3 and TT-5. Through the intercepted conversations, it was learned RIVERA-FIGUEROA discontinued utilizing TT-5 and obtained a new telephone the day prior to his arrest on September 28, 2017. RIVERA-FIGUEROA was also known to utilize a different telephone number in April 2017. This practice of changing phone numbers frequently is a common tactic utilized by narcotics traffickers as a measure to avoid having their phone numbers compromised and subject to wiretap orders by law enforcement. Based on my training and experience, I believe that the subject phones may contain evidence of RIVERA-FIGUEROA's criminal activity including telephone numbers, text messages and picture messages with RIVERA-FIGUEROA's co-conspirators. The subject phones may contain evidence of locations RIVERA-FIGUEROA frequented, which may identify locations where RIVERA-FIGUEROA met cocaine suppliers in Puerto Rico, or locations where RIVERA-FIGUEROA has hidden a supply of narcotics or illegal proceeds from narcotics trafficking.

## CELLULAR TELEPHONES AND OTHER COMMUNICATION AND ELECTRONIC DEVICES

16. The investigation has revealed, through intercepted conversations, subpoena responses, law enforcement databases, consent searches, previously executed search warrants, and witness interviews, that drug traffickers keep in regular contact via cellular telephone. Through these methods, law enforcement has been able to identify and make connections between a number of drug traffickers and their associates. Accordingly, based upon my training and experience, and my knowledge of the investigation, I believe that RIVERA-FIGUEROA has used his cellular telephones and other communication devices as a means to communicate with drug traffickers regarding illegal distribution of controlled substances and other illegal activity. As detailed in this Affidavit, intercepted conversations over several telephones between RIVERA-FIGUEROA and his criminal associates led to the identification of packages sent from Puerto Rico to Buffalo, New York which contained kilograms of cocaine. Intercepted conversations also indicate RIVERA-FIGUEROA used his cellular telephones to check the tracking information of the packages through the USPS webpage. Additionally, intercepted conversations indicate RIVERA-FIGUEROA took pictures, or screen shots of the tracking information to send the photos to RIVERA-FIGUEROA's co-conspirators who were responsible for retrieving the packages upon delivery. The photo messages were not able to be intercepted. The following series of intercepted conversations illustrates how RIVERA-FIGUEROA communicated about the packages sent from Puerto Rico.

a. On 07/27/2017 at 1:56 p.m. (**TT-1** Session 677), DANIEL NAVARRO received the following text message on **TT-1** from CESAR RIVERA-FIGUEROA from **TT-3**, subscriber unknown, "El traking es el rojo" (The tracking is on red)

11

b. Based on my training and experience, and on this and other intercepted conversations, it is believed that this text message from RIVERA-FIGUEROA was to alert NAVARRO there was a problem with the package sent to SUCELY ROMERO's residence. As detailed above, the USPIS had intercepted a package sent to 29 Tower based on information provided to the USPIS by the investigative team. The USPIS had not advised the FBI this package had been intercepted until the time of this text message. A search of the package addressed to 29 Tower was found to contain approximately one kilogram of cocaine, and two other packages were identified containing approximately three more kilograms of cocaine.

c. On 07/27/2017, at 2:56 p.m.(**TT-1** Session 692), DANIEL NAVARRO received a call on **TT-1** from **TT-2** from CESAR RIVERA-FIGUEROA, a/k/a Fat Boy, subscriber unknown. This call was in the Spanish language and was translated to English. NAVARRO said, "Hello." RIVERA-FIGUEROA said, "Hey, they did not give you a paper or anything." NAVARRO said, "What happen my love?" RIVERA-FIGUEROA said, "They did not give you a paper or anything." NAVARRO said, "No!" RIVERA-FIGUEROA said, "They told you that they would call you because they don't know the location of the box." NAVARRO said, "That they are looking, but they have not found it. But they will call as soon as they find it." RIVERA-FIGUEROA said, "Go ahead, if they have not found it. We will have to go back to put pressure on them to get a piece of paper. How can it be that they can't find it?" NAVARRO said, "I don't know." RIVERA-FIGUEROA said, "Go ahead." NAVARRO said, "Ok bye."

d. Based on my training and experience and on this and other intercepted conversations, it is believed that during this conversation RIVERA-FIGUEROA was

instructing NAVARRO to go to the post office to try to find out the status of the package sent to ROMERO's residence. It is believed that when RIVERA-FIGUEROA said, "...We will have to go back to put pressure on them to get a piece of paper," RIVERA-FIGUEROA was instructing NAVARRO to obtain a receipt to RIVERA-FIGUEROA had proof to show his cocaine suppliers the U.S. Postal Service lost the package, so they did not think RIVERA-FIGUEROA stole the cocaine.

    e. On 07/27/2017 at 7:17 p.m. (**TT-1** Session 785), DANIEL NAVARRO received the following text message on **TT-1** from SUCELY ROMERO from 716-313-9282, subscriber unknown, "Madame el traquien number again" (Send me the tracking number again)

    f. Based on my training and experience and on this and other intercepted conversations, it is believed that ROMERO wanted the tracking number to the package sent to her residence. As detailed herein, the package sent to ROMERO's residence at 29 Tower was seized by the USPIS based on information provided by the investigative team. The USPIS obtained a search warrant for the package and discovered approximately one kilogram of cocaine concealed in the box.

    g. On 07/28/2017, at 12:14 p.m. (**TT-1** Session 870), DANIEL NAVARRO utilizing **TT-1** called CESAR RIVERA-FIGUEROA a/k/a Fat Boy at **TT-2**, subscriber unknown. This call was in the Spanish language and was translated to English. RIVERA-FIGUEROA said, "Listen, my buddy is here with me, what did they tell you at the Post Office?" NAVARRO said, "That went out with the mailman." RIVERA-FIGUEROA said, "That it went out." NAVARRO said, "Hum-umm [UI] I'm waiting, I'm waiting here, still." RIVERA-FIGUEROA said, "And now the one from Utica, supposedly, have to call the one

13

from Utica, said Luis." NAVARRO said, "Have to call for-- about that?" RIVERA-FIGUEROA said, "To a number given by the post office for the box." NAVARRO said, "Umm that seems ugly." RIVERA-FIGUEROA said, "And the other one is marked as if arrived, but supposedly Luis didn't grab it and the girl didn't grab it, and there were Two there, that's Tato's." NAVARRO said, "Damn it." RIVERA-FIGUEROA said, "And the other one is mine, that's mine and my buddy's, the one who is here with me, man, I'm under so much pressure, Man." NAVARRO said, "I'm going to go to the house and then-- to go home." RIVERA-FIGUEROA said, "With who?" NAVARRO said, "With Luis, to go to the house to call" RIVERA-FIGUEROA said, "Go with-- go with Luis--- don't--- don't pay money to anybody, nothing." NAVARRO said, "Okay." RIVERA-FIGUEROA said, "Tell Luis to go where you are to explain it to you." NAVARRO said, "Okay, bye."

    h. Based on my training and experience, and on this and other intercepted conversations, it is believed that during this conversation RIVERA-FIGUEROA was asking NAVARRO about the status of the package sent to ROMERO's residence. When RIVERA-FIGUEROA said, "And now the one from Utica, supposedly, have to call the one from Utica, said Luis," he was informing NAVARRO that a package sent to Utica Street was also missing. As detailed herein, the U.S. Postal Investigation Service (USPIS) had acted on information provided to them by the FBI. The USPIS had intercepted a package sent to ROMERO at 29 Tower as well as packages to 86 Grant Street Apartment 202 and 590 West Utica Street, apartment 1. The USPIS identified the other two packages through similar characteristics. The USPIS did not provide the investigative team with this information, and therefore surveillance at these locations was not established. Search Warrants were obtained

on July 28, 2017 by the USPIS for all three packages, and they were found to contain approximately four kilograms of cocaine.

17. This investigation has shown that drug traffickers utilize telephones to communicate with each other. Based on my investigative experience drug traffickers, use their cellular phones in and around times associated with the commission of crimes. As it relates to the this case in particular, and based on my training and experience, cellular telephones and other communication and electronic devices will contain within their memory, contact lists, call logs, text messages, photos, videos, audio recordings, internet browser history, historical GPS locations and other information that would be pertinent to this ongoing investigation.

## AUTHORIZATION TO SEARCH AND SEIZE

18. Accordingly, this application seeks authorization to search for and seize, from the **subject phones** to be searched evidence of violations of the enumerated offences.

19. While I, beyond that information set forth above, have no specific information that information pertaining to narcotics trafficking, violence associated with RIVERA-FIGUEROA, or evidence of association with RIVERA-FIGUEROA and other drug traffickers are presently being stored within the identified facilities, based on my training, my experience, my participation in this investigation, and my discussions with other experienced law enforcement personnel, I have learned:

a. Narcotics traffickers frequently maintain records, notes, ledgers, and other digital records relating to the transportation, ordering, sale and distributions of controlled substances, including cocaine, cocaine base, heroin and marijuana. Furthermore, I know that the aforementioned records, notes, ledgers, etc., are generally maintained where the traffickers have ready access to them;

b. That narcotics traffickers commonly maintain records of telephone calls, addresses or telephone numbers in cellular telephones which reflect names, addresses and telephone numbers of their associates in their narcotics trafficking organization, as well as photographs of themselves and their drug trafficking associates;

c. Based on your Affiant's training, experience, and information obtained during this investigation, drug distributors utilize multiple cellular telephones and other electronic devices to facilitate narcotics trafficking.

20. Based upon the foregoing, I believe that probable cause exists that evidence related to violations of the enumerated offenses will be found in the **subject phones**, and I therefore request that the Court issue the proposed search warrant.

MARK R. SCHIRCHING
Special Agent
Federal Bureau of Investigation

Sworn and subscribed to before me this _____ day of December, 2017.

HONORABLE H. KENNETH SCHROEDER, JR.
United States Magistrate Judge